IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**DIGITAL RECOGNITION**                                                      **PLAINTIFFS**
**NETWORK, INC. and**
**VIGILANT SOLUTIONS, INC.**

**VS.**                          **Case No.  4:14CV00327 BSM**

**MIKE BEEBE, in His Official Capacity as**
**Governor of the State of Arkansas; DUSTIN**
**MCDANIEL, in His Official Capacity as**
 **Attorney General of the State of Arkansas**                 **DEFENDANTS**

## REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

      The Complaint asks this Court to enjoin the Governor and the Attorney General from enforcement of the Automatic License Plate Reader System Act (the "Act").  The Act, however, grants only two remedies:  an exclusionary rule, and a private right of action for damages, both running in favor of individuals who have been subjected to unlawful surveillance.  There is no criminal penalty, nor is there a civil penalty in favor of the State of Arkansas or any officer or agency of the State.  Consequently, neither Defendant, nor any other state official, holds a right or remedy that may be enforced against the Plaintiffs.  For this reason the rule of *Ex parte Young* does not permit them to be sued in District Court in their official capacities and, for the same reason, there is no credible threat of enforcement supporting the existence of a case or controversy.

      The Defendants' Motion to Dismiss is about the application of the Eleventh Amendment to the United States Constitution, and the Case or Controversy requirement of Article III.  It is not about providing the Plaintiffs with the most expeditious or strategically advantageous means

of presenting their claims.  Nor is it a shell game or an evasion.  The Plaintiffs have simply sued the wrong parties.

### NEITHER THE GOVERNOR NOR THE ATTORNEY GENERAL HAS THE POWER TO ENFORCE THE ACT

The Plaintiffs do not dispute that, to qualify for the *Ex parte Young* exception to the Eleventh Amendment, they must show that the official sued has "some connection with the enforcement of the act."  *Ex parte Young*, 209 U.S. 123, 157 (1908).  Instead, they attempt to dilute the requirement by shortening "some connection with enforcement" to "some connection."

The Plaintiffs argue that the Attorney General's statutory role as attorney (not as a party) for various state agencies, and the prospect that the Attorney General might intervene in a private lawsuit challenging the constitutionality of the Act, provide "some connection."  Acting as an attorney for a state official or agency does not render the Attorney General a party – a lawyer is a *representative* of clients.  Arkansas Rules of Professional Conduct, Preamble, §1.  Intervening to defend the constitutionality of an act is not "enforcement."  Black's Law Dictionary defines "enforce" to mean: "[t]o give force or effect to (a law, etc.); to compel obedience to" or "[l]oosely, to compel a person to pay damages for not complying with (a contract)."  Black's Law Dictionary (9th ed. 2009).  The right to defend a law is not the power to enforce it.

In *Okpalobi v. Foster,* 244 F.3d 405 (5th Cir. 2001), the opinion of seven of the fourteen judges sitting *en banc* provides an excellent review of the Eleventh Amendment principles that compel dismissal of these Defendants.  *Id.* at 411-424.  The following is of particular relevance to the Defendants' Motion to Dismiss:

> As we have pointed out, the *Young* principle teaches that it is not merely the general duty to see that the laws of the state are implemented that substantiates the required "connection," but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. For a duty found in the general laws to constitute a sufficient connection, it must "include the right *and the power* to enforce the statutes of the state, including, of course, the act in question ..." *Id.* at 161, 28 S.Ct. 441(emphasis added). Thus, any probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute.

*Id.* at 416-417.

No Supreme Court or Circuit Court opinion holds that an attorney general or governor is a proper party in a challenge to a state law where there is connection to implementation or enforcement and no power or authority to enforce the law.

In the case or controversy section of their Opposition to Defendants' Motion to Dismiss, the Plaintiffs imply that *Mobil Oil v. Attorney General*, 940 F.2d 73 (4th Cir. 1991) validates a suit against state officials to challenge a statute that only provides a private cause of action. Plaintiffs' Opposition at page 15. A full reading of the case reveals that the law at issue created civil and criminal penalties and expressly provided that "… the Attorney General may investigate and bring an action in the name of the Commonwealth …" for injunctive relief. *Id.* at 75. The argument made and rejected in *Mobil Oil* was that Mobil had failed to show that the Attorney General would enforce the statute. The law plainly gave the Attorney General enforcement power. *Mobil Oil* did not directly address the *Ex parte Young* requirements. Clearly in that case the statute itself assigned the Attorney General a right to enforce.

The remaining cases relied upon by the Plaintiffs are distinguished in the Defendants' Brief in Support of Motion to Dismiss. In each of those cases, the decision turned on unique state laws not present in this case. Violation of the law challenged in *Reproductive Health*

*Services* was a Class A misdemeanor.  *Reproductive Health Services v. Nixon*, 428 F.3d 1139, 1142 (8th Cir. 2005).  Missouri law permitted the Attorney General to participate in certain prosecutions when so directed by the Governor, and to sign indictments when so directed by the trial court.  In the present case, there is no criminal penalty that may be enforced by the Governor, the Attorney General, or any other state official.

In the *Bruning* case the challenged law was a constitutional amendment that banned gay marriage.  *Citizens for Equal Protection v. Bruning*, 455 F. 3d 859 (8th Cir. 2006).  The Court interpreted Nebraska law to provide "broad powers" to police "compliance with this constitutional amendment" because a Nebraska statute required the Governor to order agencies to implement legislation and the Attorney General was required by the same statute to file suit if necessary to compel compliance.  *Id.* at 865, referring to Neb. Rev. Stat. § 84-731.  In *Bruning* it was the State's implementation of the law - refusal to issue licenses and sanction gay marriage - that created the alleged injury.  The statutory implementation obligations of the attorney general and governor provided the required connection.   There is no such statutory power or obligation in Arkansas.

The final "connection with the Act" relied upon by the Plaintiffs is the Attorney General's statutory obligation to render written opinions to the Governor or heads of the executive departments, members of the General Assembly and other officials, found at Ark. Code Ann. § 25-16-706.  This power does not create any authority or power in the Attorney General for enforcement of any law – it represents a traditional function of attorneys.  Like private legal opinions, the opinions issued are advisory in nature; they do not have the force of law.  *Arkansas Professional Bailbondsman Licensing Board v. Oudin*, 348 Ark. 48, 69 S.W.3d 855 (2002).

In an attempt to shoehorn this case into the holding in *Bruning* the Plaintiffs assert that the Attorney General has a "role in policing state agencies' compliance" with the Act. The Plaintiffs have cited no Arkansas law that supports this statement and, in fact, there is none. Arkansas has no law comparable to the Nebraska law at issue in *Bruning* and, in any event, the injury the Plaintiffs claim they will sustain will arise from private enforcement, not State implementation. Moreover, even if the Attorney General had some power, by virtue of his office, to enforce compliance by a state agency such as the Department of State Police, such authority does not translate into power to enforce the Act against private entities such as the Plaintiffs.

The General Assembly's designation of the Attorney General's office as a law enforcement entity hardly translates to the power to enforce compliance by private parties. As already noted, the Act creates no rights or remedies in favor of the State against private parties and thus, whether as Attorney General or as a part of the office's Special Investigations Division, there is no power or authority to enforce the Act against the Plaintiffs.

The Plaintiffs rely on three factors to establish a connection between the Governor and enforcement of the Act. First, they argue that the signing of the Act creates the necessary connection. The Plaintiffs cite no authority for this proposition and, indeed, such a "connection" would eviscerate the "connection with enforcement" requirement because virtually every legislative enactment is signed by the Governor. *See, e.g.,* Arkansas Constitution Article 6, § 3.

Second, the Plaintiffs continue trying to inflate the vesting of the "supreme executive power of this State" in the Governor with authority to enforce the Act, again citing *Bruning*. But, as already explained, the similar constitutional provision in *Bruning* was accompanied by a specific statutory directive, and the Court found that this directive and the implementation of the

law were the cause of the plaintiffs' asserted harm. *Bruning,* 455 F 3d at 864. There is no such statutory directive here. And, as already discussed, there is nothing in the Act that the Governor might enforce or implement as to the Plaintiffs. It confers no rights or remedies in favor of the State.

Again without citing any authority the Plaintiffs assert that the "Governor could order the Attorney General not to defend the constitutionality of the Act." First, as noted earlier, defending the constitutionality of a law is not the equivalent of a power to enforce the law – which is what is required to invoke the *Ex parte Young* rule – and thus defense or non-defense has no relationship to enforcement. Second, the Governor and Attorney General are separate elected offices, created by the Constitution. Neither the Constitution nor any other provision of Arkansas law gives the Governor supervisory power over the Attorney General. Ultimately, however, the division of authority and power between the Attorney General and Governor is of no moment because *neither* has the power or authority to enforce the Act against the Plaintiffs.

## THE COMPLAINT MUST BE DISMISSED
## BECAUSE THERE IS NO CASE OR CONTROVERSY

For the purposes of the Defendants' Motion to Dismiss the well pleaded facts of the Complaint are accepted as true. This does not mean that every reference to the facts alleged by the Plaintiffs is a "concession' or "admission" unless accompanied by a disclaimer.[1] The Motion to Dismiss assumes, for purposes of the motion, that even if the Plaintiffs' allegations of fact are correct, even if their sale of ALPR systems and processing of the data are protected speech, even

---

[1] The absence of a rebuttal or response to any contention of the Plaintiffs should not be taken as an admission. It instead reflects either a judgment that the contention is not material to the issue at hand or that the Defendants believe the issue has been adequately addressed in other filings.

6

if the Act impairs their rights, and even if the impairment is unconstitutional, there is no case or controversy among these parties.

The Plaintiffs accuse the Defendants of "conjuring" a test; this contention must be based upon a failure to comprehend the essence of the Defendants' argument.  The Defendants' Brief in Support of Motion to Dismiss explains that there is no case or controversy because *these Defendants* have not, nor could they, threaten to enforce the Act against the Plaintiffs.   For purposes of the Defendants' motion it is assumed that the Plaintiffs have or will suffer an injury.  It is assumed that enforcement by *someone* could be imminent.  But, as noted in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), cited by the Plaintiffs, there must be a "substantial controversy" between parties having "adverse legal interests." Whether or not Defendants disagree with the Plaintiffs' position on the legal or policy issues presented, the Defendants' legal interests are not adverse to the Plaintiffs because neither Defendant has the power or authority to enforce the Act against the Plaintiffs.

The Plaintiffs suggest that even though the Defendants may not be directly involved in enforcement they should remain in this case as Defendants, asserting that a decision in their favor will have some impact on other cases, or may affect the Attorney General's ability to intervene to defend the law.  Without arguing the merits of these points (with which Defendants disagree), it is clear that these arguments are merely speculation about how other parties may conduct their business or how other courts will view a decision on the facts of this case.  One of the fundamental requirements to establish a case or controversy is that it be "'likely,' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision'." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  More fundamentally, even if the Defendants were otherwise proper parties to this case, the rule of *Ex parte Young* does not

operate as an exception to Arkansas' sovereign immunity with respect to the private civil enforcement provisions of the Act. *Summit Medical Associates v. Pryor*, 180 F.3d 1326 (11th Cir. 1999).

In fact, a decision in the Plaintiffs' favor will be of little consequence. As with the law at issue in *Okpalobi* the Plaintiffs confuses "the statute's immediate coercive effect on the plaintiffs with any coercive effect that might be applied by the defendants—that is, the Governor and the Attorney General." *Okpalobi*, 244 F.3d at 426 (majority opinion). In *Okpalobi* the law challenged created a private cause of action against doctors who performed abortions – but created no state remedy. Under these circumstances the Court's majority found there was no case or controversy because "[t]he governor and attorney general have no power to redress the asserted injuries. In fact, under Act 825, no state official has any duty or ability to do anything. The defendants have no authority to prevent a private plaintiff from invoking the statute in a civil suit." *Okpalobi* at 427.

Defendants disagree with many of the remaining assertions of the Plaintiffs in the section treating the case or controversy issue. But the Defendants' motion is not based upon any of these principles and so they will not belabor them, save one.

The Plaintiffs, apparently seeking an exception to the general rule, assert that a recent Supreme Court case "confirmed that neither Article III nor the First Amendment tolerates a regime" that imposes a choice between self –censorship and the risk of civil liability. *Susan B. Anthony List v. Driehaus*, No. 13-193, 2014 WL 2675871 (U.S. June 16, 2014), cited in Plaintiffs' Opposition at page 3. The Plaintiffs are clearly mistaken about the meaning and holding of *Susan B. Anthony List*. The case concerns the availability of pre-enforcement review of a law the violation of which is a criminal offense, and stands for the relatively unremarkable

proposition that pre-enforcement review may be permitted under circumstances that render the threatened enforcement sufficiently imminent. *Id.* This view, as demonstrated by cases cited by the Plaintiffs, has long been followed in the Eighth Circuit. It does not change, factually or legally, the Defendants' complete absence of enforcement authority.

## THE ASSERTED ABSENCE OF A REMEDY
## DOES NOT CREATE SUBJECT MATTER JURISDICTION

The Plaintiffs complain bitterly that dismissal will subject them to a Hobson's choice. There is no "Hobson's choice" exception to the Eleventh Amendment. *Ex parte Young* carves out a narrow exception. Other cases are dismissed in similar circumstances. E.g., *Okpalobi*, 244 F.3d 405. The Plaintiffs have a remedy, but face choices. They may assess the relative costs and benefits of non-compliance and the probability that a Court will find the Act to be un-constitutional if they resume their Arkansas operations without modification. They may choose to follow the law, or violate the law and challenge its constitutionality if a private enforcement action is commenced. The papers filed in support of the Plaintiffs' Motion for Preliminary Injunctive Relief express a strong and unequivocal belief that the Act is unconstitutional. If, as the Plaintiffs urge, the Act is so clearly unconstitutional, their risk is nominal.

The Plaintiffs are not the first, nor will they be the last, to rely on private litigation to enforce their constitutional rights. The very law that enables the lenders and repossession companies served by Digital Recognition Network to repossess cars was created by the General Assembly. Ark. Code Ann. § 4-9-609. The law previously required a judicial process. When borrowers were deprived of this process the constitutionality of self –help repossession was litigated tween private parties. *Teeter Motor Co. v. First National Bank of Hot Springs*, 260 Ark. 764, 543 S.W.2d 938 (1976). Similarly, lenders who thought Arkansas' usury law to be

9

unenforceable engaged in business in Arkansas and tested the law in private litigation. *McInnis v. Cooper Communities*, 271 Ark. 503, 611 S.W.2d 767 (1981) (preemption of Arkansas' usury law by Depository Institutions Deregulation & Monetary Control Act of 1980).  The Plaintiffs' circumstances are not unique.

The Plaintiffs urge this Court to adopt a rule of law, based on the opinions of the authors of two law review articles, that would create new exceptions to the Eleventh Amendment.  They present no other authority ignoring over 100 years of established precedent.

Finally, the Plaintiffs offer, apparently jokingly, that since the Defendants have no role in the enforcement of the Act there would be no harm in making the State a Defendant.  If stated seriously as an argument or proposition it is beyond the pale.  The points addressed in the Motion to Dismiss go to the subject matter jurisdiction of the Court, which cannot be waived.   The suggestion warrants no further response.

## CONCLUSION

The Eleventh Amendment to the United States Constitution provides that no state may be made a defendant in the district courts.  One narrow exception permits certain actions for prospective injunctive relief to proceed against a state official, in his or her official capacity. Where the suit involves a challenge to the validity of a law the official sued must have a connection to the enforcement of the law being challenged.   The Automatic License Plate Reader System Act establishes no rights or remedies against the Plaintiffs that may be enforced by either Defendant or by any other state official.   Nor does Arkansas law give the Attorney General or Governor more generalized authority or power that would permit them to enforce the Act against the Plaintiffs. For this reason, subject matter jurisdiction is lacking.

Subject matter jurisdiction is lacking for the additional reason that there is no case or controversy between these parties. Whether or not the Plaintiffs have or may suffer an injury, or whether in the right circumstances the court might be able to redress the injury, is of no consequence because neither Defendant has the power or authority to enforce the Act against the Plaintiffs.

For the reasons stated herein and in the Defendants' Brief in Support of Motion to Dismiss, the Complaint should be dismissed.

Respectfully submitted,

DUSTIN McDANIEL
ATTORNEY GENERAL

By: /s/ *Patrick E. Hollingsworth*
PATRICK E. HOLLINGSWORTH
Arkansas Bar No. #84075
Assistant Attorney General
Attorneys for the Defendants
323 Center Street, Suite 200
Little Rock, AR 72201-2610
(501) 682-1051
Patrick.Hollingsworth@arkansasag.gov

## *CERTIFICATE OF SERVICE*

I, Patrick E. Hollingsworth, Assistant Attorney General, hereby certify that on July 10_, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants, including the following:

| | |
|---|---|
| Jane W. Duke | Michael A. Carvin |
| Mitchell, Williams, Selig, | Ryan J. Watson |
|   Gates and Woodyard, P.L.L.C. | Jones Day Law Firm |
| 425 West Capitol, Suite 1800 | 51 Louisiana Avenue, N.W. |
| Little Rock, Arkansas 72201 | Washington, D.C. |
| jduke@mwlaw.com | mcarvin@jonesday.com |
| | rwatson@jonesday.com |

/s/ Patrick Hollingsworth
PATRICK E. HOLLINGSWORTH