IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**DIGITAL RECOGNITION NETWORK, INC.**          **PLAINTIFFS**
**AND VIGILANT SOLUTIONS, INC.**

v.                    CASE NO. 4:14CV00327 BSM

**MIKE BEEBE,** *in his official capacity as*
*Governor of the State of Arkansas*, **AND**
**DUSTIN MCDANIEL,** *in his official capacity*
*as Attorney General of the State of Arkansas*          **DEFENDANTS**

## ORDER

The motion to dismiss [Doc No. 19] filed by defendants Mike Beebe and Dustin McDaniel is granted. The motion for preliminary injunctive relief [Doc. No. 2] filed by plaintiffs Digital Recognition Network, Inc. ("DRN") and Vigilant Solutions, Inc. ("Vigilant") is denied as moot.

### I. BACKGROUND

Arkansas Act 1491 of 2013, codified at Ark. Code Ann. § 12-12-1801 *et seq* ("ALPR Act"), regulates the use of "automatic license plate reader" ("ALPR") systems and renders it unlawful, absent an enumerated exception, "...for an individual, partnership, corporation, association, or the State of Arkansas, its agencies, and political subdivisions to use an automatic license plate reader system." Ark. Code Ann. § 12-12-1803(a). The statute, however, does not delegate enforcement to any arm of the state, but provides that any person injured by a violation of the act may seek damages against the person responsible for the violation. *See* Ark. Code Ann. § 12-12-1807.

Vigilant develops image-content technology that allows images to be analyzed in order to extract certain information. One product that uses its technology is the ALPR application, which records license plates and converts those images into a digital format that is then translated into computer-readable text. DRN sells cameras equipped with the ALPR application to its affiliates, typically towing and repossession companies. These affiliates mount the cameras on their vehicles in order to record license-plate data while the vehicles are in motion. After the license-plate data is translated into computer-readable text, it is compared to a database of license plates registered to vehicles sought for recovery or repossession by one of DRN's clients, typically lenders and insurance companies. When such a vehicle is located, the affiliate-driver is alerted and authorized to take possession of the vehicle.

In addition to recording license-plate data and analyzing its content, the ALPR system collects date, time, and location information indicating when and where each photo was taken. This information is immediately uploaded and stored in DRN's data center for use in recovering vehicles sought by DRN clients. Through its partnership with Vigilant, DRN also shares the information with law enforcement agencies for a wide-range of uses, including locating missing persons, stolen vehicles, and furthering ongoing investigations.

Plaintiffs were distributing their technology and products in Arkansas prior to the adoption of the ALPR Act. Fearing extensive litigation, however, plaintiffs ceased distributing and using ALPR systems in Arkansas when the ALPR Act was adopted.

Plaintiffs are suing Arkansas's governor and attorney general, seeking a declaration that Ark. Code Ann. § 12-12-1801 *et seq* is invalid because it violates the First Amendment's Free Speech clause. The motion for preliminary injunction [Doc. No. 2] was filed the day the complaint was filed and defendants have moved to dismiss for lack of jurisdiction. [Doc. No. 19.]

## II. STANDARD

A complaint will be dismissed if subject-matter jurisdiction is lacking. *See* Fed. R. Civ. P. 12(b)(1). Standing is a jurisdictional prerequisite that must be determined before the merits of a suit may be reached. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). Sovereign immunity is also a jurisdictional doctrine. *See Brown v. United States*, 151 F.3d 800, 803–804 (8th Cir. 1998).

## III. DISCUSSION

Defendants' motion to dismiss is granted because defendants have sovereign immunity. Although plaintiffs have made fairly compelling arguments in support of their request for injunctive relief, this is a classic case of the state of Arkansas "throwing a rock and hiding its hands." That phrase is used in the Mississippi Delta when someone takes an action but does not want to suffer the consequences of that action. Here, the state passed a law essentially outlawing the use of ALPR systems but giving no enforcement authority to any arm of the state. Instead, the state of Arkansas gave a private right of action to persons injured by a violation of the ALPR Act. Consequently, the state hangs the threat of litigation

over plaintiffs' heads, thus deterring them from engaging in what may be constitutionally protected activity, while at the same time preserving the state's Eleventh Amendment immunity.

A.    Standing

A question that must be answered at the outset is whether plaintiffs have standing to bring this lawsuit. The answer to that question is yes. To have standing, plaintiffs must demonstrate: (1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). The injury must be sufficiently concrete and particularized, rather than speculative or hypothetical. *Id*. at 560.

It is fairly clear that plaintiffs meet the first two requirements. This is true because self-censorship is an injury in fact when a statute is challenged under the First Amendment. *See 281 Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). And the record indicates that the threat of litigation created by the ALPR Act has caused plaintiffs to cease using and/or distributing ALPR systems in Arkansas. This self-censorship is objectively reasonable, and because this is a pre-enforcement challenge to the act, plaintiffs' injury is sufficiently concrete. *See Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334 (2014); *Arneson*, 638 F.3d at 630–31.

Whether plaintiffs can satisfy the third requirement is a closer call, but it appears that

plaintiffs satisfy that requirement as well. If plaintiffs were merely seeking to enjoin defendants from enforcing the ALPR Act, they would lack standing because such an injunction would not prevent private parties from suing plaintiffs for violating the ALPR Act. Consequently, there would be no redress of the injury based on the outcome of this case. Plaintiffs, however, are seeking more than to enjoin these two defendants; they are also seeking a declaration that the ALPR Act is unconstitutional. As a result, plaintiffs satisfy the third requirement because succeeding on this request would provide an adequate remedy for their injury.

B.   Sovereign Immunity

Defendants are immune from this lawsuit. The Eleventh Amendment reflects a well-settled constitutional principle that lawsuits against states and official capacity claims against state officials are barred, unless a state consents or Congress has abrogated the immunity. *See Alden v. Maine*, 527 U.S. 706, 727 (1999) (holding that sovereign immunity derives from the structure of the original Constitution itself). A limited exception to sovereign immunity permits a state official to be sued in his or her official capacity to enjoin prospective actions that violate federal law. *See Ex Parte Young*, 209 U.S. 123 (1908). This *Ex parte Young* exception applies only to officials who have a duty to enforce a state law and who threaten and are about to commence proceedings to enforce the law. *Id.* at 155–56. The strength of sovereign immunity is such that it cannot be overcome unless an official is connected to enforcement of the statute in question, or is specifically charged with the duty to enforce it

and is threatening to exercise that duty. *See Reprod. Health Servs. of Planned Parenthood v. Nixon*, 428 F.3d 1139, 1147 (8th Cir. 2005) (Bye, J., dissenting) (citing *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) (en banc)).

The *Ex Parte Young* exception does not apply here and defendants are entitled to sovereign immunity because they are not connected to enforcement of the ALPR Act, nor have they threatened to enforce it. First, nothing in the Act itself, which creates only a private right of action, gives any enforcement authority to either defendant. *See* Ark. Code Ann. § 12-12-1807. Although an official need not have primary authority to enforce the challenged statute, no Arkansas law provides defendants with any authority to enforce this statute. *See Arneson*, 638 F.3d at 632.

Plaintiffs argue that the attorney general is connected because he may intervene in any action challenging the constitutionality of a statute and has the duty to defend the interests of the state in federal court. *See* Ark. Code. Ann. §§ 16-111-106(b); 25-16-703(a). Plaintiffs also argue that the "supreme executive power" vested in the governor by the Arkansas Constitution connects him to enforcement of the act. *See* Ark. Const. Art. VI, § 2. These arguments fail, however, because general authority to enforce state law does not vitiate sovereign immunity. *See Okpalobi*, 244 F.3d at 416 (holding that more than general duty to implement state laws is required to overcome sovereign immunity); *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 113 (3d Cir. 1993).

Further, this case is markedly different from others in which the Eighth Circuit held

that the connection between a state official and the enforcement of a statute was strong enough to overcome sovereign immunity. Here, the statute provides no criminal penalties and neither the statute nor any other law grants defendants enforcement authority, even if asked or directed to do so. *Cf Nixon,* 428 F.3d at 1145 (holding there is a sufficient connection between challenged statute that criminalized its violation and Nebraska attorney general who had authority to aid prosecutors and file indictments); *Arneson*, 638 F.3d at 632 (holding there is a sufficient connection because Minnesota attorney general had authority to initiate a civil complaint or become involved in criminal prosecution under the statute); *Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006) (Nebraska attorney general was not entitled to sovereign immunity because his broad powers included "policing compliance" with a statute banning same-sex marriage, as shown by his advisory opinion on the statute's constitutionality; the statute, although it did not call for affirmative enforcement, served as a barrier to government action). Plaintiffs rely heavily on *Bruning*, in which the Eighth Circuit applied the *Ex parte Young* exception in holding that Nebraska law gives the attorney general and governor broad powers to enforce state law. *Id.* Arkansas law differs, however, from Nebraska law in that Nebraska specifically tasks both the attorney general and the governor with the duty to implement state laws. *See* Neb. Const. Art. IV, § 6; *See* Neb. Rev. Stat. § 84-731. Although the Arkansas constitution does vest the governor with "supreme executive power," it does not give him the authority to enforce all state laws, nor does it task him with the duty to do so. *See* Ark. Const. Art. VI, § 2.

Even if defendants had enforcement authority, plaintiffs cannot show that defendants have threatened to commence enforcement proceedings. *See Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996). As pointed out in the dissent in *Nixon*, the limited exception to sovereign immunity under *Ex parte Young* is appropriate only where there is a particular duty to enforce a statute and a willingness to do so. *See Nixon*, 428 F.3d at 1147 (citing *Okpalobi*, 244 F.3d at 424). The record is devoid of anything indicating that defendants have threatened to enforce the statute or shown any willingness to do so.

Because defendants are immune from suit, their motion to dismiss [Doc. No. 19] is granted.

## IV. CONCLUSION

Defendants' motion to dismiss [Doc. No. 19] is granted and this case is dismissed. An appropriate judgment shall accompany this order.

IT IS SO ORDERED this 22nd day of August 2014.

_____
UNITED STATES DISTRICT JUDGE